UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEREMY SCHOLL, | ) |
|     Plaintiff/Counter-Defendant, | ) |
| v. | ) Case No. 12 C 1806 |
| CHICAGO REGIONAL COUNCIL OF CARPENTERS, an unincorporated association, | ) Judge John W. Darrah |
|     Defendant/Counter-Plaintiff. | ) |

## MEMORANDUM OPINION AND ORDER

*Pro se* Plaintiff/Counter-Defendant Jeremy Scholl ("Scholl") filed an Amended Complaint against Defendant/Counter-Plaintiff Chicago Regional Council of Carpenters ("the Union"), alleging numerous claims related to disciplinary proceedings the Union instituted against Scholl in 2010. The Union filed a Counterclaim against Scholl to recover a fine levied against him as a result of those disciplinary proceedings. Before the Court are the Union's Motion to Strike and Dismiss Scholl's Amended Complaint and Scholl's Motion to Dismiss the Union's Counterclaim.

### BACKGROUND

Scholl filed his original Complaint against the Union on February 23, 2012, in the Circuit Court for the Sixteenth Judicial Circuit, DeKalb, Illinois. On March 12, 2012, the Union removed the cause of action to this Court on the basis of federal-question jurisdiction. (Dkt. No. 1.) Scholl filed a motion to remand on April 4, 2012. (Dkt. No. 17.) The motion was denied pursuant to 28 U.S.C. §§ 1331 and 1441 because Scholl's Complaint included at least one claim over which this Court has original jurisdiction. (Dkt. No. 34.)

1

On March 19, 2012, the Union filed a Rule 12(b)(6) Motion to Dismiss Scholl's original two-page Complaint. (Dkt. No. 6.) That Complaint was two pages long and stated claims for defamation of character *per se*, extortion, conspiracy to extort, wrongful termination, breach of contract, conspiring to breach contract, "violation of civil rights (act 1964)," "intent to defraud, and defrauding," and conspiring to defraud. (Dkt. No. 1-1 at 5-6.) Rather than respond to the Union's motion, Scholl sought leave to file an Amended Complaint, after which the Union voluntarily withdrew its motion.

On June 19, 2012, the Union filed an Illinois state-law Counterclaim for collection of the fine the Union "Delegate Body" imposed against Scholl. (Dkt. No. 31.) Scholl filed his Amended Complaint on September 13, 2012; and, on October 9, 2012, he filed his Motion to Dismiss the Counterclaim. The Union filed its Motion to Strike and Dismiss the Amended Complaint on October 24, 2012.

**LEGAL STANDARD**

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *Christensen v. Boone*, 483 F.3d 454, 458 (7th Cir. 2007). Under the federal notice pleading standards, "a plaintiff's complaint need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (internal quotations omitted). When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed in the light most favorable to the plaintiff; all well-pleaded factual allegations are accepted as true and all reasonable inferences are construed in the plaintiff's favor. *Id.* However, a complaint must allege "enough facts to state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). For a

claim to have facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Thus, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Further, the amount of factual allegations required to state a plausible claim for relief depends on the complexity of the legal theory involved. *Limestone Dev. Corp. v. Lemont*, 520 F.3d 797, 803 (7th Cir. 2008).

The pleadings of *pro se* litigants should not be held to the same stringent standard as pleadings drafted by formally trained lawyers; instead, they must be liberally construed. *Wilson v. Clayton, Ind.*, 839 F.2d 375, 378 (7th Cir. 1988). Regardless of the deferential standard, however, the pleadings are still required to comply with applicable procedural rules. *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001).

Scholl's Amended Complaint (Dkt. No. 56 ("Am. Compl.")) is disorganized and convoluted, making it difficult to discern the precise facts underlying this case, as will be further discussed below. The first eleven pages of the Amended Complaint present very few helpful or comprehensible factual allegations to support Scholl's claims. However, the following facts that can be pieced together from the Amended Complaint's allegations and attached exhibits are accepted as true for purposes of resolving the Union's Motion to Dismiss. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010).

Scholl is a resident of DeKalb County, IL, and a former member of the Union. The Union is an unincorporated association based in Cook County, IL. This case arises out of a dispute over disciplinary action that the Union took against Scholl for alleged violations of the Union's constitution and by-laws during 2010 and 2011. (Am. Compl. Exs. 7, 8, 14, 15.) The allegation at the center of the disciplinary action, and Scholl's eventual expulsion from the

3

Union, seems to be that Scholl performed work at a site that was unauthorized for Union work. (*Id.* at Exs. 5, 15, 18.) The Union alleged that Scholl's unauthorized work violated the Union's constitution and by-laws. (*Id.*) The Union held a "Trial Board hearing" on October 26, 2011, and on December 3, 2011, the Union's "Delegate body adopted the recommendation of the Trial Committee" and imposed a fine against Scholl in the amount of $60,150.00. (*Id.* at Exs. 7, 8.)

**ANALYSIS**

*Union's Motion to Strike and Dismiss the Amended Complaint*

Scholl's Amended Complaint is 121 pages long and consists of approximately twenty-nine pages of allegations and ninety-two pages of exhibits. The vast majority of the Amended Complaint is difficult to follow, at best. It does, however, contain a list of eight specific claims against the Union. Scholl alleges claims for "violation of fair duty of representation under the NLRA" (Am. Compl. at 12); "extortion under the Hobbs act [sic]" (*Id.*); violation of the Taft-Hartley Act (*Id.* at 18); violation of the Eighth Amendment to the Constitution of the United States (*Id.* at 21); defamation *per se* (*Id.* at 22); violation of Title VII of the Civil Rights Act of 1964 (*Id.* at 25); violation of the Whistleblower Protection Act of 1989 (*Id.*); "violation of the anti-trust act (Sherman trust act [sic])" (*Id.* at 26); and breach of contract (*Id.* at 27.) The Amended Complaint fails to state a plausible claim for relief under any of the counts, and therefore, none of these claims survives the Union's Motion to Dismiss.

<u>Extortion, Eighth Amendment, and Whistleblower Claims</u>

Three of Scholl's claims – violations of the Hobbs Act, the Eighth Amendment to the Constitution, and the Whistleblower Act of 1989 – are simply inapplicable in the present context and are, therefore, dismissed. Scholl's first claim alleges "extortion under the Hobbs act [sic]." (Am. Compl. at 12.) The Hobbs Act is a criminal statute that makes it a crime for any person to

4

"obstruct, delay, or affect commerce" by robbery or extortion. 18 U.S.C. § 1951. The Hobbs Act does not provide a private right of action for extortion. It is clear, therefore, that Scholl cannot maintain a claim against the Union for a violation of the Hobbs Act.

Nor does Scholl have a claim against the Union for a violation of the Eighth Amendment. The Amended Complaint alleges that the Union violated the Eighth Amendment when it issued a fine against him for over $60,000. (Am. Compl. at 21.) However, the Eighth Amendment's prohibition on "excessive fines" applies only to fines assessed in criminal cases and not to those in private civil actions. *Browning-Ferris Indus., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 264-65 (1989).

Scholl's reliance on the Whistleblower Protection Act of 1989 is also misplaced, as that statute applies only to federal employees. 5 U.S.C. § 2302; *Wills v. Grundy County*, 2008 WL 4874061, at *4 (N.D. Ill. June 26, 2008). Nowhere in the Amended Complaint does Scholl allege that he was or is a federal employee. Therefore, his claims for violations of the Hobbs Act, the Eighth Amendment, and the Whistleblower Protection Act are dismissed.

*Violation of Duty of Fair Representation under NLRA*

Scholl's first claim alleges that the Union violated the "fair duty of representation" under the National Labor Relations Act ("NLRA"). 29 U.S.C. § 158. A breach of the duty of fair representation under the NLRA "occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1966). The Amended Complaint gives little, if any, indication of the factual basis for this claim. Though Scholl makes it clear that he believes the disciplinary process was unfair and that he did not deserve the fine that the disciplinary board imposed, the Amended Complaint contains no factual allegations to support an inference that the Union's conduct was "arbitrary,

5

discriminatory, or in bad faith." Aside from quoting a portion of the NLRA, all the Amended Complaint states with respect to this claim is that there was a violation of the duty "especially with what should have been an arbitrary petty incident and under a landscape that should be recognized in terms of economic and unjustly enriched parameters." (Am. Compl. at 12.) Even under the liberal standard applied to *pro se* pleadings, Scholl fails to allege enough facts to state a facially plausible claim for breach of the duty of fair representation under the NLRA. *See Twombly*, 550 U.S. at 547.

## Violation of the Taft-Hartley Act

In a separate portion of his Amended Complaint, Scholl alleges that the Union "violated the Taft-Hartley Act." (Am. Compl. at 18.) He then quotes 29 U.S.C. § 141, which declares the purpose and policy of the Act. It seems that this claim is based on Scholl's contention that the trial the Union administered was unfair. (Am. Compl. at 18.) To support that contention, Scholl sets forth a number of allegations. First, Scholl alleges that one of the trial board members was the brother of the business representative of the Local Union to which Scholl transferred. (*Id.* at 19.) Next, Scholl alleges that he was not given adequate time to prepare for the trial. (*Id.*) Finally, he states that the Union member who initiated the charges against him arrived to the trial in the same car as two of the trial board members. (*Id.* at 20.) Scholl makes no effort, however, to clarify which section of the Act he intended to invoke or which section would entitle him to relief, provided his allegations are true. Without more, it is impossible to say that Scholl has stated a claim for "violation of the Taft-Hartley Act." *See Tamayo*, 526 F.3d at 1081 (complaint must provide a short and plain statement "sufficient to provide the defendant with fair notice of the claim and its basis").

## Defamation *Per Se*

Scholl's next claim against the Union is for defamation *per se*. Under Illinois law, to establish liability for defamation, a plaintiff must allege that "(1) the defendant made a false statement concerning the plaintiff; (2) there was an unprivileged publication of the defamatory statement to a third party by defendant; and (3) publication of the defamatory statement damaged the plaintiff." *Brennan v. Kader*, 814 N.E.2d 1207, 1215 (Ill. 1996). Scholl may only maintain an action for defamation *per se* – meaning damages are presumed – if he alleges a statement or imputation that fits into one of five actionable categories: "(1) commission of a criminal offense; (2) infection with venereal disease; (3) inability to perform or want of integrity in the discharge of duties of public office; (4) fornication or adultery; or (5) words that prejudice a party in her trade, profession, or business." *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 924 (7th Cir. 2003) (citing Illinois law).

Though he makes no such allegation, Scholl is presumably relying on the last of those categories to hold the Union liable. It is difficult, however, to discern the actual statement or statements that Scholl alleges to be defamatory. In a number of places throughout the Amended Complaint, Scholl makes reference to a Union representative, Cory Zimmerly, calling Scholl a "rat" when Zimmerly saw Scholl doing the allegedly unauthorized work. (*See, e.g.*, *id.* at Ex. 15.) In setting forth his defamation claim, Scholl again references a "Union rep," presumably Zimmerly, who used the term "ratt [sic] in public, and created animosity within the local." (Am. Compl. at 23.) After that statement, however, the remaining allegations supporting the defamation claim make little sense.[1] Scholl does not make a coherent connection between Zimmerly's statement to Scholl (or any other statement, for that matter) and any resulting

---

[1] In the middle of the defamation section, the Amended Complaint suddenly slips into a discussion of intentional infliction of emotional distress (IIED). (Am. Compl. at 23). It is unclear whether Scholl intended to plead a separate claim for IIED. Regardless, the disjointed and incoherent nature of that discussion, and the fact that Scholl does not plead the required elements, makes it clear that he fails to state a claim for IIED. *See Curcio v. Chinn Enter.*, 887 F. Supp. 190, 194 (N.D. Ill. June 5, 1995) (setting out required elements of an IIED claim).

7

prejudice in his trade, profession, or business. Nor does he allege that Zimmerly made the statement while acting within the scope of his Union employment, as Scholl is required to do because he did not sue Zimmerly individually. *See Kim v. Kim*, 360 F. Supp. 2d 897, 901 (N.D. Ill. March 9, 2005) (noting that under the theory of *respondeat superior*, employers are liable for defamatory statements made by their employees within the scope of their employment). For those reasons, the defamation *per se* claim is dismissed.

Retaliation under Title VII of the Civil Rights Act of 1964

Next is Scholl's Title VII claim. (Am. Compl. at 25.) It appears as though Scholl attempts to plead that the Union violated Title VII's prohibition on employer retaliation against an employee who "opposes … an unlawful employment practice." 42 U.S.C. § 2000e-3; (Am. Compl. at 25). To establish a retaliation claim under Title VII, Scholl would need to allege that he engaged in an activity protected under Title VII; that he suffered a materially adverse employment action; and either a causal connection between the two (the "direct method"); or that a similarly situated employee who did not engage in the protected activity was treated more favorably (the "indirect method"). *See Harper v. C.R. England, Inc.*, 687 F.3d 297, 307 (7th Cir. 2012). Scholl's factual allegations again become nearly incoherent immediately after he cites to the statute. He begins to discuss an entity called "Cedar Creek Carpentry" and various lawsuits in which they were involved. (Am. Compl. 25.) Scholl fails to allege that he engaged in an activity protected under Title VII, as well as fails to allege a causal connection between such an activity and an adverse employment action. Scholl fails to plead a plausible claim for relief under Title VII, and therefore, this claim is dismissed.

### Antitrust Violation

Scholl's next claim purports to allege that the Union violated federal antitrust law. The Amended Complaint alleges a "violation of the anti-trust act (Sherman trust act [sic]) [15 U.S.C. §§ 1-7] within and as a paying participant in 2010 at the time of the union representatives reckless acts." (*Id.* at 26.) The allegations that attempt to explain or support this claim are nearly impossible to comprehend. At one point in this section of the Amended Complaint, Scholl states, "[w]hat I am alleging is the defendant and his loyalty are with the union and the general contractor Svedberg where he received kickbacks for favors of easing labor burdens and reducing liability where he was previously employed." (*Id.* at 26-27.) He provides no helpful context or other information that would give the Union "fair notice" of this claim. *See Tamayo*, 526 F.3d at 1081. Again, even under the liberal standards applied to *pro se* pleadings, these allegations do not state a plausible claim for relief.

### Breach of Contract

The final claim in the Scholl's Amended Complaint is for breach of contract. This claim, too, is so incomprehensible that it cannot survive the Union's Motion. Scholl begins explaining this claim by again citing the standard for breach of the statutory duty of fair representation under the NLRA. (Am. Compl. at 27.) He references a contract a number of times, but at no point indicates what contract that is. Scholl then begins to discuss high unemployment rates and his adjusted gross income for the year 2010. (*Id.*) Scholl not only fails to allege how the Union breached a contractual duty, but also fails to allege the existence of a contract between him and the Union at all. Scholl's breach of contract claim is, therefore, dismissed. *See Tamayo*, 526 F.3d at 1081; *Twombly*, 550 U.S. at 547.

### Union's Motion to Strike

The Union's Motion also requests that portions of the Amended Complaint be stricken under Rule 12(f). (Dkt. No. 67 at 13-14.) That request is denied. Motions to strike are generally not favored, and "pleadings are generally not stricken unless the moving party will be prejudiced otherwise." *Burke v. Chicago School Reform Bd. of Trustees*, 169 F. Supp. 2d 843, 846 (N.D. Ill. Apr. 30, 2001). Because none of Scholl's claims survives pursuant to Rule 12(b)(6), the Amended Complaint is dismissed in its entirety. The Union will not be prejudiced, and the Motion to Strike is, therefore, denied.

### *Scholl's Motion to Dismiss the Union's Counterclaim*

Though he titles it a "Motion to Dismiss under Rule 12(b)(6)," (Dkt. No. 62), Scholl's Motion does very little to attack the legal sufficiency of the Union's Counterclaim as pleaded. Instead, the majority of Scholl's Motion argues that the factual allegations that are the basis of the Counterclaim are false. However, because the only claims over which this Court had original jurisdiction have been dismissed, it is now unnecessary to rule on Scholl's Motion to Dismiss the Union's Counterclaim.

After removing the case to this Court, the Union filed its Counterclaim as a compulsory supplemental claim pursuant to 28 U.S.C. § 1367 and Federal Rule of Civil Procedure 13(a)(1). (Countercl. ¶¶ 8-9.) The Counterclaim is an Illinois state-law claim for the collection of the fine that the Union's disciplinary board imposed upon Scholl. (*Id.* ¶ 7.) Because all of Scholl's claims have now been dismissed, the state-law Counterclaim is the only claim that remains.

"Ordinarily, a federal court relinquishes jurisdiction of a pendant state-law when the federal claims have been dismissed before trial." *Rothman v. Emory Univ.*, 123 F.3d 446, 454 (7th Cir. 1997). There are cases in which certain factors, such as "judicial economy, convenience, fairness, and comity," will counsel in favor of the federal court retaining

jurisdiction over the lone state-law claim. *See id.* This, however, does not appear to be such a case. However, it is not necessary to rule on Scholl's Motion as there is presently no federal claim; therefore, Scholl's Motion is denied without prejudice to refile should federal jurisdiction be later established.

## CONCLUSION

For the reasons set forth above, the Union's Motion to Dismiss the Amended Complaint is granted pursuant to Rule 12(b)(6); and Scholl's Amended Complaint is dismissed without prejudice. Scholl may file a second amended complaint within thirty days of the entry of this order, provided he can do so consistent with the requirements of Federal Rules of Civil Procedure 8, 10, and 11. Scholl's Motion to Dismiss the Union's Counterclaim is denied without prejudice. This matter is continued to March 19, 2013 at 9:30 a.m. for status.

Date: February 6, 2013

JOHN W. DARRAH
United States District Court Judge